Good afternoon, Illinois appellate court 1st district court is now in session. The 6th division, the honorable justice, Carl Walker presiding case number 25 dash 1825 Todd Berman v. Napleton's Schaumburg Subaru, Inc. And good afternoon, everyone. I am just as Carl Walker. I have here with me today. Just as or a chance key or a really intense. I'm sorry. And I just just Michael behind me and I'd like to ask the parties who will be arguing Mr. Morgan and Mr. Elliott. If you could please introduce yourself. So, let's start with the appellate. Good afternoon, your honors, Tim Elliott with Rathjean Woodward on behalf of the appellant. Good afternoon, your honors, Scott Morgan on behalf of the appellee Berman. Thank you. You will both have 20 minutes total time for your argument. And Mr. Elliott, I'd like to ask you if you want to save any time for rebuttal. Thank you, your honor, I would like to reserve 5 minutes for rebuttal. Please. I've managed to have it. Okay, so, and Mr. Elliott, if you can go ahead and get us started. No need to go over the facts. We know the facts already. We'd rather really get into your argument right away. If you can do that for us, please. Sure, may it please the court Tim Elliott again on behalf of of the appellant. Arbitration is a favored means of dispute resolution, both under Illinois law and federal law. There was a clear agreement to arbitrate here and the trial court erred in finding otherwise. Well, I think we should have made that decision. Mr. Elliott. Now, because really, when we think about the decision regarding. Arbitrary is that should the arbitrator be making the decision or should the trial court be making the decision? Well, it's a 2 point issue or it's a 2 point analysis or 2 part analysis. The 1st question is, is there a valid agreement to arbitrate? That has to be done by the court and the trial court below properly address that issue. The 2nd issue 2nd, part of it is once there is a valid agreement to arbitrate. All the other questions, like our particular claims arbitrable, or may non parties enforce the arbitration agreement. All of that can be done by a court or an arbitrator. We would submit here that needed to be delegated. But the threshold inquiry that judge Cohen made below. Which was that there wasn't a valid agreement to arbitrate. We admit that needs to be done by the court. And the reason he found there was not a valid agreement to arbitrate here was he found that there were irreconcilable differences between the parties different documents. And on that issue, we would submit the trial court just. Misread the documents in fact, the documents are easily. Reconcilable the threshold issue of law here is the question of when you read documents together. When the law is well settled, when there are multiple documents that are signed as part of 1 integrated transaction. They have to be read together as a single contract. With terms reconciled if possible, and we've cited the Gallagher case and the tip for case on that. How can you read these? How can these be reconciled? When they say opposite things, well, they don't they don't say opposite things. And so maybe it makes sense to to address the 3 particular points that the trial court found where the problem. The 1st is in the form selection provision. Now, the retail installment contract. Has a menu of options for the forum. It says you can go to the American arbitration association. Or the national arbitration and mediation association, or and this is the critical language. If you and we agree, you were, we may choose a different. Arbitration organization, so under the retail installment contract. There's an agreement to arbitrate the forum isn't particularly important. The contract offers 2 options and says, but if you select a 3rd, 1, we're fine with that as well. The DRA, the dispute resolution agreement, which was the standalone document. That calls for arbitration before the better business Bureau. And that would be the other agreement that the retail installment contract was allowing. Would you agree that different organizations have different rules and different costs? They do, they do. So it's a, it's a, it's a very important thing. Which 1 and what you're saying is, even though you had an agreement that said, a, B. And something else, see, if you agree, you have to take a or B, but you can agree to see you're saying, well, because you said we gave you and these are all adhesion contracts. There was no discussion that you just gave. These were from you. Your clients, so there was no discussion. These are consumers. And the consumer then is you're saying is stuck with B. B. B. just because. You gave them 2 agreements that say different things. Why why is that wrong? Analysis I would, I would resist greatly. The, the characterization is an adhesion contract. Because there's no, there's no coercion here. I didn't say coercion. I said adhesion. Okay. All right. With with adhesion contract. That's when this is a consumer. This is not these are not sophisticated parties on both sides. You're asking the consumer had no choice, right? This card came with all this. They had to sign that's what it says. So they had to sign. There was no negotiation was there any negotiation in these agreements on the arbitration provisions? There's no evidence 1 way or another on that, but there's no evidence because it didn't happen. You know how this happens. I mean, we've all bought cars. They were just given these agreements. They signed them. I mean, if there was any, I'm sure you would have showed it if there was any discussions. But if you, if you take a step back, obviously. Arbitration provisions are relatively standard and all sorts of consumer transactions, phone companies do them auto manufacturers to them. They're all over the place. They're enforced, though, because Illinois honors the, the, the, the notion that. When you sign something, unless that's there, you demonstrate. Coercion, unconscionability, fraud in the inducement, any of those things you're held to what you agree to. That's not the issue here. This is a very narrow issue with regard to arbitration. Isn't it? Because in this situation. You doubled up and you have 2 agreements that are. Different, however, you want to characterize them. They're different. And I hear you saying, which 1 came 1st, the retail installment contract, the dispute resolution agreement. I'm not sure. I'm not sure for purposes of our argument. It matters. Which 1 came 1st because. They're signed together, so they need to be read together. And if 1 of them expressly defers to the 2nd, 1. Then the 2nd, it does not expressly confer. It says if the parties agree. That the other 1 said, then you want to give them the 1st 1. I mean, you gave them 2 agreements and you're trying to enforce both when there. Can't be rexiled and set various issues and that's what the judge felt. We're not, we're not trying to enforce them both. We're saying they ought to be read together, but the, how can you can't read them together? Because they're irreconcilable on these issues. You just went to the 1st 1 and you say, well. Just because they signed the, whether it was 1st or 2nd. The, the fact that it was a B. Or if we agree, see, and you're saying they signed a different agreement and so it has to be. BBB that doesn't make any sense. They didn't know what the BBB was going to be involved. Well, but that's also presuming that they knew had any clue what the triple a, or the, the other 1, the national arbitration mediation association was right. I mean, that's why we have to be very careful in a consumer situation. That this isn't this is very clear what's happening. And it's not, you know, not that I'm in the Bermans, but they've got these both of these agreements. So I'm trying, I'm trying to figure out how if it can be reconciled. I love to hear it, but. Well, I'm, I'm explaining how how we believe they can be reconciled because there's, there's 3 documents. 1. 1 says, you can agree to someplace else. The BBB 1 says, you have to go with BBB and the 3rd document, which is the waiver says you're going with BBB, but I would also take you to the sort of our alternative argument, which is even if they're irreconcilable. What the car decision says is the form selection isn't integral to an agreement to arbitrate unless there's some evidence that the actual forum really matter. Right, that's the car decision is the Brown decision and there's a variety of federal court cases. That was my question to you. I asked the question different organizations have different rules and costs. So it can in that material. Isn't that material? Why did you pick BBB and not pick a. I, I, I'm not sure of the quality. I'm not sure either, but I'm sure that somebody knew. I, it may be, it may be that it was simpler and cheaper and quicker to do. I don't know. Well, if you knew that they didn't know that and that's why you gave them an opportunity. If they agree to something else, they should have a right to. To agree to it and know what's going on. So it sounds like what you're just conceded. It is a material term. No, I'm not suggesting that at all. I'm saying there's what's what's missing here. Is any evidence any allegation that the particular forum was important to Mr Berman or quite frankly to our client and that their agreement to arbitrate was subject exclusively to that. Forum, I mean, that's really what the car case was all about. The car case said, look, you guys agreed to arbitrate. That means you're, you're out of the court system agreeing to arbitrate. If you can show that the particular provision. That excuse me, the particular forum was of such importance that nobody would have agreed to arbitrate, but for that forum. Then the forum provision is material. And if you can't show that, then it's not in this particular instance, you know, there's no evidence that Either party was saying, you know, oh my gosh, the the BBB has such specialized knowledge here that if you can't go before them or jams or triple A or whoever the other one for The issue of car, as I recall, was it was, I think it was a some sort of financial transaction and the arbitration service that was designated had really specialized rules and procedures. But there's no evidence here or even an allegation that Mr Berman was saying, oh my gosh, it has to be triple A. It's just not material. The overall agreement is we're going to arbitrate. And in this particular instance, the path through the documents leads you to the BBB. That's the way that you can do that. But even if there was no agreement, even if there's an irreconcilable conflict, both the Illinois And the federal arbitration acts have provisions that allow you to to put in substitute in a different arbitrator that's in the statute. We're not talking just about the arbitrators, you know, there's there's many provisions that are irreconcilable or let's I won't even go there. There are many provisions that are different in both agreements. Would you agree to that? There are different provisions in the agreements. Right. Well, the three that were pointed out by the judge were the fees or the parties respective burden on costs, who decides arbitrability and forum. And I'm saying none of that is material. Is that your position? I'm saying none of it's I'm saying none of its material, but I'm also saying it's it's easily reconciled. The arbitrator reconciled as long as it's in your favor. Is that it? How is it so easy? I don't know. It's just a based on a plain reading of the contracts. So go ahead. You were about to explain explain how they're easy to reconcile. Go ahead. Sure, let's talk about I think we've talked about the foreign selection provision quite a bit. The the RIC, the retail installment contract offers a number of options and says you can agree on something else. The BBB says, excuse me, the DRA. Identifies the BBB, which is why we move to compel in front of the BBB. With respect to who decides the second issue, who decides threshold issues of arbitrability. The retail installment contract says on its face that's deferred to the arbitrator. That's clear. The conflict that Judge Cohen found below was he said, well, hold on a second. The DRA was silent on that issue. And if it's silent, that means the court decides that issue. Respectfully, he was mistaken on that, because the other thing that the DRA says is. The BBB rules are incorporated into this document and the BBB rules like the AAA rules like the jams rules like most of the other rules that I'm familiar with, say the arbitrator decides threshold issues of arbitrability. And the case law in Illinois and elsewhere is very clear that when you incorporate those rules, even in a consumer contract into the arbitration provision. That is an express delegation to the arbitrator. So there really is no difference on that, whether you're under. The retail installment contract or under the DRA threshold issues of arbitrability are going to be decided by the arbitrator. Third conflict that Judge Cohen pointed out was he said, wait a minute, under the retail installment contract, the consumer might have to pay up to $5,000 under the BBB arbitration, the DRA, the consumer is only on the hook for $100. The contracts can be read together to result in the lower financial burden being applied. The BBB incorporates the BBB rules, excuse me, the DRA, too many acronyms, incorporates the BBB's rules, which say only $100. So the retail installment contract says you can select another arbitration service, another forum and its rules. The DRA says this is going to be under the BBB and the consumer only pays $100. That's a great result for Mr. Berman and one which, quite frankly, I'm surprised they're disputing. Because that's less than the filing fee in most of the circuit courts in Illinois, maybe all the circuit courts in Illinois. So that's not a conflict either. With respect to the question of materiality, we've discussed or hashed out the materiality of the forum issue. So, I hear your argument. What you're arguing is we just forget about the retail installment contract. Is that right? Your argument is just forget about it. Never mind. No, I'm not. I'm not. Everything you said just now had to do with the DRA and the BBB. Everything you just said, you went with that one. Yet, they signed two agreements and therein lies the case. So you just say we will ignore that agreement. If you're not saying that, then tell me why everything goes with the second agreement. I'm not saying that because you have to read the contracts together. And so, to the extent that there is other verbiage in either the DRA. Just tell me, is there anything you're just saying? Everything you just said argued for the DRA. Everything. And so, what is it in the other agreement that's even relevant now? Well, I mean, there's a lot in the other agreement. I would point out there's a class action waiver in the other agreement. Yeah, but there isn't one in here, is there? So you're saying that doesn't apply? What? Which of the class actions in the RIC? It's in the RIC, but- Yeah, that's right. And you're saying that's a big difference, isn't it? Wow, all of a sudden, the BBB, no class action. So you don't care about that. Well, let me take a step back and try to respond by saying two things. And these are the two reasons why I fundamentally disagree with what you just said. Number one, you're reading the contracts together. You're not choosing one over the other. You're reading them together. So you're really just focusing on any terms that are potentially in conflict with one another. Those are the only terms that really have to be worked out. So the fact that there's a class action waiver in the RIC, there's nothing similar in the BBB, or excuse me, in the DRA. But I'd also point out that the BBB rules don't provide for class action arbitration anyway. So whether you proceed through the mechanism in the RIC or the mechanism in the DRA, you're not getting a class either way. So you can reach that point in two different ways. I'm just, just fast forward with me for a minute. You've got three different documents, including the waiver, if you include the waiver or the BBB rules, that are worded differently. So the consumer sitting there at the desk with the guy trying to buy a car has to sign these papers or you don't drive out with a car. Wouldn't it just be easier in the future, fast forward, to have an agreement that says, here's how much, here's the car that you're getting, and here's how much you're going to pay for it. And here's how you're going to pay for it. And here's the warranty. And this is what it covers. And here's the section on arbitration in one place, not in three different places, but in one place. So you have a minute to read it and you see you do waive class action or you don't waive class action, but it's all just in one place, not three different places. Because obviously any consumer that's faced with all of this stuff, looking forward to driving this great new car, isn't going to realize all these anomalies in these three different documents. And Napleton hires you to draft these documents. Why not make them simpler? Why not make them consistent? Why not make them separate pieces of a larger package of documents so that you can figure out what are the rules here? So to answer your question, yes, it would be a thousand times easier if everything was included in one comprehensive document. Well, one comprehensive document with several separate sections that are very clear and that are consistent internally. That's what I'm asking for. I don't see how three separate documents helps anybody except Napleton. Well, I'm not sure it helps Napleton either. To be quite honest with you, I'm not certain why there are multiple documents. I know when I buy a car or engage in a lot of different transactions, I'm always blown away by the number of things I have to sign. Don't even get me started on a house closing. Yes. But so I'm going to guess there's probably business reasons why there are different documents. Maybe some go to different third parties. I have no idea. But I agree with you. It would be easier if we were to do that. But that's not, unfortunately, the set of facts we're dealt with. We've got multiple agreements. And this is, unfortunately, not an uncommon situation. I think you saw that we cited you a number of federal court cases where there were transactions. I think the one in the Tenth Circuit involved six different contracts. The one in the Fifth Circuit, I think, had four or five. I don't recall. But the analysis in all of those is to, number one, determine whether they can be reconciled. And if they can't be reconciled, then you look at the places where there's a disagreement and you say, are these particular terms integral to the party's agreement to arbitrate or are they procedural details? And that's the same approach that the Carr case took with the Supreme Court. They said there's an agreement to arbitrate. And some parts of that agreement might be so important that if there's disagreement or inability to do it, that it just undercuts the agreement to arbitrate altogether. And there are other provisions that maybe it's a detail. And critically, for purposes of this appeal, what the Carr case, what the Carr court said was, unless there's compelling evidence that the choice of forum was absolutely integral, that if that forum wasn't available, that the parties wouldn't agree to arbitrate, then the forum isn't essential. It's not integral. It becomes a detail and you can use the provisions in the FAA or the IAA that allow you to select another arbitration forum. And in this particular case, there's just no evidence or even allegation that a particular forum was critical. The retail installment contract says, here's two possibilities. You can agree to a third if you want. That's not integral. That's the opposite of integral. Same thing with the fees. Again, if you're under the DRA, the fees are less than you'd pay to file in the circuit court of Cook County or DuPage County where I'm located. That's just not material to the overall agreement to arbitrate. And Mr. Elliott, as we listen to your argument, and we've read your brief, we're familiar with the trial court's order. Tell us how exactly did the trial court err here? The trial court erred in two, well, I'd say really three fundamental ways. First, it erred by not finding that these agreements can be read together. And for the reasons that we just explained, we think they can be read together. Second, it erred, even if it found the conflicts, which it did, it erred by saying that those conflicts were integral to the party's agreement to arbitrate. He didn't really even do that analysis. He didn't do the integrality. He didn't determine whether the terms on which there's a conflict were material or not. But the third thing that he did was the question of whether the other party, the Mazda, that wasn't the dealer here, that's not a signatory to the contracts. He found that Mazda couldn't enforce the arbitration agreement. That wasn't really his decision to make. If this court finds that there is a valid agreement to arbitrate, then the arbitrator has to decide whether or not the Mazda entity can enforce that agreement to arbitrate. Is that true under both agreements? Yes. Yes. Because the RIC or the retail installment contract expressly delegates those issues to the arbitrator. Under the dispute resolution agreement that incorporates the BBB rules, those also expressly delegate those issues to an arbitrator. But you said it was silent on that. The dispute resolution agreement is, on its face, does not contain language like retail installment contract does that says questions of arbitrability will be decided by the arbitrator. What it does say on its face is the BBB rules are incorporated into this contract. And the BBB rules provide that the arbitrator decides questions of arbitrability. Would a buyer sitting across the desk from the sales guy have the BBB rules handy? No, but the contract says that you can get those rules. The contract says that they're available on the website. And I would say that court after court after court, including this court in the Huberman case, have found that language like that, that incorporates the rules, is sufficient to be a clear and unmistakable delegation, which is the language that the U.S. Supreme Court uses. A clear and unmistakable delegation to an arbitrator. Illinois law and federal law up to the Supreme Court are very clear on that point. You want me to tell you just about out of time here, you've got about a minute left, but I'll let you go ahead and finish up. But I was just going to say the other thing, Justice Paczynski, that I think your question sort of presupposes that I would challenge a little bit. Is that someone buying a car and signing an agreement that they know is going to take them out of the court system and put them into arbitration, that it would be material to them whether or not an arbitrator would or would not be the one making arbitrability determinations. And that, I think, is sort of the piece that is lost in a lot of this. The threshold decision here is as a purchaser of a car and as a seller of a car, are we going to wind up in the court system or are we going to go to arbitration? It was very, very clear on the face of these documents that both parties were agreeing they're going to arbitrate. And there's a lot of details associated with that that we as lawyers and judges look at that there's really no evidence of, and I think it would defy common sense to believe, is material to, frankly, a purchaser or seller at the time. And with that, Justice Walker, I yield to my colleague, Mr. Morgan. Thank you, Mr. Alley. Mr. Morgan. Thank you. Good afternoon. May it please the court and counsel. In listening to argument, while counsel says to the panel that these terms are not material, he obviously believes that the choice of the Better Business Bureau is material and critical. Well, I think he's arguing that they're not material to the extent that he's given us the resolutions to why they're not material. That if you think about what he's just argued, what's the issue? Well, I think the issues are outlined in Judge Cohen's order. But I do want to get back to the position that Napleton is taking here. Look, the court is going to consider the argument that the parties agreed to arbitrate before the BBB or to take judicial notice of the BBB's rules and consider them in resolving the issue of whether the parties agreed the arbitrator would decide arbitrability, excuse me. Substantial justice would be served by finding they did not agree to that. And I'll try to walk through this as best I can. Under Rule 307A1, the court reviews the order the circuit court actually entered. On the record, the circuit court actually had. The appellants never argued to Judge Cohen that the BBB was the other arbitration organization agreed to by the parties. They never submitted the BBB's rules to Judge Cohen to take judicial notice of. And they never argued below that the BBB's rules delegate arbitrability. But it's important to review the actual language here. Aside from the fact that the appellee had no opportunity to develop a record on those issues, since those issues were not before Judge Cohen. The prejudice is real under the circumstances. I just, you're saying. That Judge Cohen never saw the BBB rules. There was not included in any documents before Judge Cohen. That's absolutely correct. And here he's arguing that the consumer was supposed to know and go online at the time of buying a car. Is that what I heard? Is that what you heard? That's my understanding of the position that Nagleton takes. So apparently what you're saying is that this, well, what you're implying is this case can be decided without the AAA, without the BBB rules because they weren't before the court. Correct. Okay. And if we do that, then his arguments about the BBB rules is beyond the scope of the briefing. That's what I'm trying to say. That's beyond the scope of what happened below. It's not in the record below. And what we should be determining, I think, is Judge Cohen's order based on the record below. These things were not in the record. But we have to look at this de novo because it wasn't understood. Okay. Understood. So, but even looking at de novo in the record, there is no BBB rules. Correct. In the record below. In the record below. Yeah. Thank you. He's obviously put them before us. Nagleton has put those before us here on this appeal for the first time. But I also want to get into why the entire argument fails. Nagleton says that the DRA provides gateway arbitrability questions to the arbitrator and not to the court. This is directly contradicted by the relief the appellants themselves sought in the circuit court. In both their motion to dismiss and compel arbitration and their reply and support, the appellants provided an identical prayer for relief. And they asked that, quote, this court enter an order compelling plaintiff to submit his claims to arbitration and dismiss the action in its entirety. Before judge Cohen, they asked him to decide arbitrability by ordering the plaintiff to submit the claims to arbitration. They didn't ask him to order the parties to arbitration so that the arbitrator could decide the arbitrability of those claims. And now they want another bite at the apple. In so far as their argument goes before us here today. And in your argument, just understand what you're saying. I believe you're saying they waived. That yes, but they never brought it up before judge Cohen. They let judge Cohen. They didn't say to judge Cohen, judge, you can't do this. In fact, Mr. Elliott argued. He said, there's two questions. You know, the first question was whether there's an arbitration agreement. And then the arbitrability questions. And you're saying judge Cohen. They waive the arbitrability question by just by not raising it. That's correct. That's correct. But there's also something else that I believe is in play. They asked judge Cohen to decide that twice deliberately in the most formal portion of their pleadings, the prayer for relief. Having invited the circuit court to exercise exactly the authority. They now say it lacked. The appellant shouldn't be able or shouldn't be heard on appeal to complain that it did. So they invited Mr. Morgan. Let's let's just back up a little bit because I want to make sure that. Is it almost I want to make sure that what you're saying is not misleading to us. But you agree that the retail is the retail installment agreement was. A part of the material that was before judge Cohen, correct?  Well, then you also agree that the retail installment agreement clearly provided. That the parties could choose a different arbitration organization. I agree that that that that was in the retail installment agreement, correct? Yeah, that they could choose an arbitration for us. Please, please, please, please. So you say that that information was never before the trial court. That's not a true statement that you're making because it's in the retail installment agreement. Retail installment agreement was before the trial court. So so just be careful how you're you're being a fact about what you're saying. I want to make sure that you're being truthful. Thank you, your honor, and I'm always trying to be truthful. And would never try to mislead this panel at all. And if I somehow gave that impression, that's not what I was trying to do. My point is, yes, the RIC, retail installment contract says the parties can choose a different arbitration forum. It says that clearly. Which means that they can choose the DRA or the BBB or so forth and so on. Right. That's that's absolutely correct. OK, so so so when you say that, I just want to be clear. So you say that Mr. Elliott or whoever represented the parties in the trial court didn't place this information before the trial court. It was before the trial court because it was before the trial court in the retail installment contract. I don't think the rules were before the court. I never saw them in the proceedings. Are you talking about the BBB rules? Sorry. Yes. OK. Yeah. The BBB rules and and there was a reference to the BBB, but there was no copy of their rules before the trial court. And but Mr. Elliott was talking about those rules here on appeal. I thought that was your point. That is my point. That Judge Cohen didn't have those. He had the DRA that talked about the BBB, but the BBB rules were not attached to it. For the buyer and the BBB rules were not attached to the pleadings in the trial court. So talking about so talking about the BBB rules that say arbitrability is up to the arbitrator. Should not be here on review because it wasn't before the trial court. That's what I have been trying to say.  That's what I was hearing, but I wasn't sure. So thank you. But as you know, Mr. Morgan, that's always the case. That's the question that I opened with. That the decision of whether or not it should go to the arbitrator, that's made by the trial court, as Mr. Elliott stated. But then the issue of arbitrability is decided by the arbitrator, not the trial court. Correct. I'm understanding what your honor is saying. I believe so, but I apologize, Judge Walker. I guess what I'm trying to say is. Below, Napleton never argued that the BBB rules required the arbitrability decision to go to the arbitrator. The rules weren't before Judge Cohen, and that argument was not before Judge Cohen. They asked Judge Cohen to make those decisions directly. But there's also, and I don't know if that's answered your questions. You're fine. You're fine. You can go. Okay, thank you. But there's also something else I wanted to try to get to. Aside from what we've been talking about in the record before the court, there is another major problem in this new argument that they're making. Delegation of arbitrability requires a clear and unmistakable agreement to delegate. I talked about the appellant's own conduct where they sought the trial court's ruling on arbitrability as evidence. They understood at the time that the trial court should make that determination. Their conduct is inconsistent with the very delegation they now assert. The appellants ask you to take judicial notice of those Better Business Bureau rules of arbitration they found. They argue that those rules they found definitively determined the issue of arbitrability under the DRA is to be decided by the arbitrator based on those rules. Those arguments fail entirely. First, the court in our opinion. I understand what you're saying is they would fail because that was never before the court. Is there anything else? I mean, the court never had it. I don't know what else you're going to say, but if the court never had it and it was argued before us, I'm troubled by that. Because the issue, as I understood his argument, it was you have to look at those rules and that's how you reconcile it. And so if they never presented it to the court, the court couldn't do the reconciliation that was presented in the oral argument. Is that accurate that I just said? I believe that's accurate. I was going to try to get to another point that undercuts their argument, and I'm now looking at the dispute resolution agreement itself, and it's the one page document that lays out the different steps. Step three, and I quote, if the interview process does not resolve the dispute, you may then contact Better Business Bureau of Chicago. It gives a website www.chicago.bbb.org. It then gives you a phone number 312-245-2570. It then says the BBB will attempt to mediate the dispute in step three and arrive at a resolution acceptable to both parties. The BBB of Chicago is not the National Better Business Bureau from which counsel has asked this court to take notice of the rules he provided. They are not. He didn't provide any rules, but is that right? Well, he's asked to ask. There's no way I can see any rules. He made an argument. He argues that we should take judicial notice of those rules. What does the agreement say? In the agreement, does it talk about Chicago or does it talk about National? Better Business Bureau of Chicago. No, in the agreement, in the agreement. In the agreement, it says Chicago. Yes. And it doesn't say National. I don't know what he was referring to now because you just said, but before the court below, the court would have been able to see that, what you just said. That's correct. Was an agreement, but we don't know what rules they might use. That's what I'm trying to say. And clearly BBB refers to Better Business Bureau of Chicago. I am not trying to state anything outside the record. However, if anybody went to that website, it is a dead website that takes you nowhere. And that phone number takes you to a conference line and asks for a pin number. Which one in the agreement, the one in the agreement, the dispute resolution agreement. Yes. So that the very thing they refer to doesn't even exist. I believe the rules that your honors have been asked to take judicial notice of aren't even from the Better Business Bureau of Chicago. They're from the national organization. And how do we know that BBB means Better Business Bureau of Chicago? Because they're in the very same step three. That's what BBB refers to. And then, oh, sorry, judge. No, no. Well, I understand where you're going. So tell us how all of this would, how it relates to what counsel said. Because counsel says, look, there are two agreements that said they're arbitrate. Parties definitely wanted to arbitrate.  And there's a way to reconcile them and they can be reconciled. And the judge did not do that. So how does that, your argument counter his argument when, you know, arbitration is preferred and all those things and the cases and so forth. Yeah, obviously. I'm trying to get down to the practical. Yeah, sorry. Yeah. So the arbitration acts don't have anything to do with why we're here. There was no agreement to arbitrate, period. There was no meeting of the minds. There was no mutual assent. And what Napleton now tries to do is to get the court to believe that these rules that have been submitted would require arbitrability to go to the arbitrator. Those aren't even the correct rules because they're not from the Better Business Bureau of Chicago. They haven't put anything forward to support the argument that the rules require arbitration because they don't have the correct rules. The Better Business Bureau, the BBB refers to the Better Business Bureau of Chicago, not the national organization. And we don't know what those rules are from the record. And they also say that the rules are available. This is step four, that the rules are available on the BBB website. Again, BBB is the Better Business Bureau of Chicago. That website, again, for purposes of illustration, is dead. It doesn't take anybody anywhere. Yeah, but we can't take notice of that because it's not in the record. But what I'm looking now, I don't recall in your brief, you said, nope, I'm looking at your brief and it says DRA mandated arbitration before the Better Business Bureau. You don't, I don't see where you said anything about Chicago. I don't know that it's in the brief, your honor, of Chicago. I don't know that. But I do know what the DRA says specifically on that issue. We have the DRA. Yes, and it's the one page document. And I'm talking about steps three and step four, steps three and four. If your honors review that language, I think it's determinative of the issue. Also, so step three is what is being referred to here. And it says, definitely says Chicago BBB. And then it says, can request binaries through the BBB, the rules of which are available on the BBB website, which only BBB that's referred to, if I'm correct, is Better Business Bureau of Chicago, correct? Yes. So it's not the general BBB, it's this specific website or a phone number. Yes, and specific entity, Better Business Bureau of Chicago. That's what it says. Yeah, and so to get to another point, essentially, we agree that the documents would be read together. But what they asked this court to do and what Judge Cohen refused to do was to allow the dispute resolution agreement to swallow the retail installment contract. That is rewriting the party's agreement. That is not reconciling them. That is allowing the dispute resolution agreement to trump all of the arbitration provisions referenced by Judge Cohen in his order in favor of the dispute resolution agreement over the retail installment contract. That is the essence of rewriting an agreement versus reconciling the agreement. I think that's what I had to say about the BBB and the DRA and the conflicts therein. You're right, the differences in the costs are significant. What does not come out is Berman would have to pay an arbitrator for his time to hear the arbitration. That is something that is significant. That is a lawyer putting in the time to get up to speed on the case and to understand the arbitration. Also, the dispute resolution agreement is very vague in that regard while the retail installment contract is very specific on the costs and how those specific costs. Mr. Morgan, what I think Judge Cohen's order does for us is it tells us the reasons why we should not enforce the arbitration agreement. But what you're saying to us is that there is no agreement. So, I want you to walk us through the reasons why you say that there is no agreement to arbitrate because those are two different things. You agree, right? Well, yes. I think there has to be an agreement in either case. Okay, well, tell us why there's no agreement.  Judge Cohen is telling us he's not saying there's no agreement. He's saying this is the reason we should not enforce the agreement. Now, you tell us why there's no agreement. Well, I think the fact that the terms are irreconcilable means that there's no agreement to arbitrate. The material terms in the two, well, the three documents, the two arbitration provisions cannot be reconciled at all. They cannot be reconciled absent one swallowing the other on arbitrability, on forum, and on the costs. And so, if you don't have an agreement on those three issues because the terms are irreconcilable, then there's no agreement to arbitrate. And just by signing a document, if that document is not enforceable as to those terms, there's no agreement as to those terms. And I think that is the case that we understand and have tried to put forward. And I believe that's part of the basis for Judge Cohen's ruling as it relates to those three issues and the fact that the documents cannot be reconciled. The terms cannot be reconciled. Actually, Mr. Morgan, you're out of time now. But I'll let you go ahead and finish up. But I'll first check to see if the justices have other questions. Justices, are there other questions for Mr. Morgan? Justice Fudgeski is saying no. Justice Hyman, I believe you're frozen. Oh, no, you're not frozen. You have no questions, Justice Hyman? Oh, go ahead, Justice Hyman. Well, I'm only, as I understand it, the only thing with regard to the dispute, the DRA, is what is what was called Exhibit C, a one-page document. Yes. That was before the court. There was nothing else. Yes. So the $100 was before the court. Yes. But not anything else with regard to any experts or arbitrators or who would pay what or costs other costs. Says the judge will pay the first $100. The first $100 in arbitration. Dealer will be responsible for the balance. All parties agree to pay their ethical fees. But if there's any other charges, we don't know about that.  Right. Right. And that, meanwhile, the retail installment contract goes into great detail on how certain fees and costs are going to be allocated. Much more specific. And so we're trying to override the specific terms, I suppose, with more general term. And again, I think that would constitute rewriting the agreement between the parties. Further justices? Okay. Justices have nothing further, Mr. Morgan, but can you go ahead and take a minute and a half or so and just close out? Yes. Thank you. So in essence, what we have is Judge Cohen's order denying the motion to compel arbitration. And the judge had a very finite record before him. He reviewed those documents together and including the provision that the defendants say he disregarded. He didn't disregard anything in that sense. The arbitration provisions cannot be reconciled. And under Illinois contract law, there is no agreement between the parties to arbitrate. Thank you. Thank you, Mr. Morgan. And Mr. Elliott, you reserved five minutes for rebuttal. You may go ahead. I did. Thank you, your honors. And I want to respond very directly to the points made by Mr. Morgan. But first, I just want to take a step back and make an overarching point. We identified three errors. Justice Walker, I think you asked, what were the errors by the trial court? We identified three. The first was Judge Cohen found that they're irreconcilable terms. We think they can be reconciled. The second point was, even if they can't be reconciled, they're not integral to the party's agreement to arbitrate. And then the third related to the arbitrability issue with respect to the non-dealer, Mazda. Everything that you have just heard related to the first of those three points. You did not hear a word from Mr. Morgan on the materiality analysis. And I think that's significant because Judge Cohen also did not say anything about the materiality of the terms that he found to be irreconcilable. His opinion was silent on that. And that was error because the Carr case requires that analysis to occur. The Carr case says when there's an overall agreement to arbitrate, the court has to determine what's integral and what's not. That didn't happen below. The opinion is completely silent on it. And you didn't hear anything on that today. I want to talk about the first issue, though, whether they're reconcilable or irreconcilable. And what you heard was really a lot of arguments of forfeiture by us. And those aren't right. And I want to walk through the points that he raised because they're just not supported by the record. The first point he raised is he said, hey, we sent the issue of arbitrability to Judge Cohen. And therefore, that's a waiver of forfeiture of any argument that the arbitrator gets to decide whether particular claims are within the scope of arbitration. That's just wrong. What we said is the dispute needs to be sent to an arbitrator. And then we said in our brief, and this is on page 91 of the record, page 50 of our appendix. Even if the scope of an arbitration agreement is unclear, a situation not applicable here, the court must direct the initial question of arbitrability to the arbitrator. That's what we said below. So what we were doing is saying, Judge Cohen, you need to send this to an arbitrator. That arbitrator is going to decide whether or not particular claims are subject to arbitration or not. So he's just wrong on that. The second point that he raised is partially correct, but only partially. He is correct in saying that Judge Cohen was never provided with an actual physical copy of the BBB rules. He's correct in saying that. But he's wrong in saying that we didn't present the argument to Judge Cohen that we presented to you. Below, we pointed out that all of these documents are part of a single integrated transaction. We did that at page 91 of the record. That's in our motion. And the relief that we asked the court to compel was to compel arbitration before the BBB. We weren't arguing for the other forum, the AAA or whatever else is in the retail installment contract, but we were arguing for the BBB. Both in our motion and in the DRA, there's express reference to the BBB rules. That's in the contract, the DRA. It's also in our motion, the motion to compel arbitration. Again, I think this is at page 91 of the record. I think I have that right. Makes, excuse me, specific reference to the BBB rules. What? I want to go back a minute because you talked about car. I just looked at car. The word materiality, does that appear in car? It's the word integral. That's the word. Oh, okay. It doesn't say material. You talked about materiality. Now, is there a difference between materiality and integral as a matter of law? You say that they're the same, right? I did not use the word materiality. You said they were material. Now you're saying cars is integral and you are correct. It does. So what is the difference between materiality and integral if there is one as a matter of law? I'm not certain what the difference is. And so if you would take my use of the term material today to actually mean integral, which I acknowledge is the term that was used in that decision, that I'm not aware of the distinction, but I should have said integral. Well, if you should have said integral, then isn't Judge Cohen, you said he didn't talk about materiality. He didn't have to. He had a call whether it was integral. And what he was saying is that those things he talked about were integral. He wasn't talking about materiality. Those are different concepts. What is material to something is different than what is integral. And you can look that up. But I'm still concerned that you gave us arguments in your opening that are specifically related to items in the rules of the BBB that are not on that one page. And that concerns me since you've conceded that Judge Cohen did not have those rules and that you did not argue those rules. So why should we accept your rationalization, which was you were reconciliating exactly what you're supposed to do, right? Can you reconciliate? And that's what you were doing for us by using those rules. Yet he never had those rules, but you made that argument to us. So what are we supposed to make of it? I'm happy to address that. That's the point I was actually just turning to next, which is he did not have the physical rules, but the barrier that counsel is really giving us or the hurdle that counsel is asking us to clear is a bit of a difficult hurdle because the first time that Judge Cohen interpreted the contract and issued the ruling and said, hey, wait a minute, we've got a problem here because one document refers threshold issues of arbitrability to the arbitrator and the other one is silent, was his ruling. He interpreted the documents in his ruling that's on appeal now. That's the first time he did that. So I suppose we could have brought a motion to reconsider and said, hold on a second, Judge Cohen, the document and our brief both talk about the BBB rules. Here's the BBB rules. Here's why that's wrong. But I don't think we're required to do that because as you pointed out, and I think part of one of your inquiries with Mr. Morgan, this is de novo review. And so we're allowed to come to this court and say he interpreted the documents wrong and here's why. No, but you can't look at the, but you were arguing, look, you were arguing things in the BBB rules, right? That was never argued to the judge and the judge had to reconcile those with just what he had. And that's all we have. That's the record, right? You would agree with that. We have the record. Okay. So we can't look at those rules either because they're not in the record. Whatever you could have done, you know, that's, it's not done. So we're left with a record before us. And on that record, you were attempting to reconcile those agreements. Judge Cohen could not have done that because he didn't have the information that you were giving us. And that is my point. You, you were making arguments based upon class action. I don't see the word class action at all on that one page. Right. It's not there. The word class action is not there. So when you were making that argument about, well, both agreements say there's no class actions. That was not before the judge. And, and, you know, and you're saying, well, that's not material. Well, it might've been integral. And that is the issue. And so, you know, I, I, I'm, I'm very disturbed that, that you would make an, an arguments to us without that information having been, because you're a very well-known and respected lawyer and I respect you, but really you were making an argument that it wasn't part of the record. And, and I, I don't know how you reconcile that. I, I'm, I'm, I'm happy to do that. You said it wasn't before Judge Cohen. He had the same ability to take judicial notice of the BBB rules. He didn't have them. He didn't have them. You didn't give them to him. He's not supposed to go looking and hunting for something. You're saying it's his fault. Is that what you're saying? If we, we could have brought a motion to reconsider. It doesn't matter. You didn't, I, we have to do with the record before us. You seem to be saying you're not at fault here. Okay. I can understand that. But I, I, I still, my comment stands that what we have to do in deciding this case is the record. And it's not in the record. And not only that, you were talking about the big BBB and then the record, it talks about the Chicago office. And I, we don't know anything about that. And we're not supposed to be going to go look at the Chicago office and go in line and do research on our own. No, that's, that would be a violation of our, our conduct to do that. And that's, and that's, that's the point I was going to get to next, which is there's a huge irony here in that we are being accused of raising a new issue in our briefs on appeal when the whole thing that you just heard about, well, the Chicago BBB is different from the national BBB. And I picked up the phone and I couldn't call the number. That's not, I said, I wasn't considering that. That's not right. That's not, and I said that specifically because you're right. I agree. We're only going to listen to what, so that's irrelevant. I don't care about that. We, we asked this court to take judicial notice of the BBB rules rather than saying, because as this court, because it's not, it's not in the record, but the court can take judicial notice of those rules. And even if you have them below the judge in heaven, but if the judge was supposed to take judicial notice, and if it was that important, you would have brought it to the judge's attention because you had to use it in order to reconcile for us that they were, whether you want to use the material, which was the word you were using, and now you changed it to integral, whatever it is, you had to refer to the rules and the judge did not have it yet made the decision. And we have to live with that. And you do too. And so does the plaintiffs. But I would, I would go back to the point that I said at the beginning of my rebuttal, which is whether you use the word integral, which is the correct word, or the word material, which is the word that I used as shorthand incorrectly, I think, as your honor's pointing out, the analysis is the same. Mr. Morgan didn't touch that integrality in, in his argument. And Judge Cohen didn't address that integrality below at all. And what, what Carr says is you have to look at whether it's integral or not. Is it so essential to the agreement that they wouldn't have agreed? But for that, that's, that's the point that Carr raised. And the example. Ms. Elliot, you're actually out of time, but I want to, I'm going to let you take a minute and a half and just kind of close everything up. Sure. The point that I'm trying to raise is with Carr, fortunately for us, the example that they were using in that case, and in the Brown versus Defree case, the second district case, the example they were looking at was forum. And so you've got a great Illinois Supreme Court decision that really addresses this and says, when is forum integral and when is it not? And it's only integral when something makes the point that, hey, they wouldn't have agreed, but for this, they wouldn't have agreed. And they, they cannot clear that threshold here. So whether the terms are reconcilable or not, they are not integral. I would just close by making a final point. I think Mr. Morgan indicated that beyond the arbitration fees, his client would be on the hook for paying arbitrator fees. That's just not correct. The term fees in that DRA encompasses all fees. The dealer would be paying the arbitrator fees and all the other fees. They're really only on the hook for the first $100. So with that, unless your honors have any more questions, I would thank you for your time and attention this afternoon.